MENDHEIM, Justice.
Consolidated Pipe & Supply Co., Inc. ("Consolidated Pipe"), petitions this Court for a writ of mandamus directing the Morgan Circuit Court to vacate its September 19, 2017, order transferring this case to the Jackson Circuit Court. We grant the petition.
I. Facts
On August 3, 2017, Consolidated Pipe filed the underlying action in the Morgan Circuit Court against The Ohio Casualty Insurance Company ("Ohio Casualty"), Bolt Construction & Excavating, LLC ("Bolt Construction"), and Michael Bolt (hereinafter referred to collectively as "the defendants"). According to Consolidated Pipe's complaint, the West Morgan East Lawrence Water and Sewer Authority ("the Water Authority") contracted with Bolt Construction to perform a public work known as "the Vaughn Bridge Road Water Line Relocation Project No. 14018.00" ("the project"). Bolt Construction also obtained payment bond no. 16069745 ("the bond") from Ohio Casualty as surety to cover the project. As the sole owner of Bolt Construction, Bolt executed the bond contract on behalf of Bolt Construction on March 22, 2016. It is undisputed that the project was located in Morgan County.
In the course of performing its contract with the Water Authority, Bolt Construction entered into a contract with Consolidated Pipe pursuant to which Consolidated Pipe was to supply materials for use in the project. Bolt executed a guaranty in conjunction with the contract with Consolidated Pipe in which he agreed to unconditionally and personally guarantee full and prompt payment of all sums owed to Consolidated Pipe by Bolt Construction in the event Bolt Construction failed to pay the contracted-for amount. In its complaint, Consolidated Pipe alleges that Bolt Construction failed to pay Consolidated Pipe for the materials it furnished to Bolt Construction for the project, a cost it asserts amounts to $59,784.38.
Consolidated Pipe's complaint asserts four counts against Bolt Construction, Bolt, and Ohio Casualty. First, it asserts that Bolt Construction and Ohio Casualty violated Alabama's "little Miller Act," Ala. Code 1975, § 39-1-1 et seq. This count expressly sought recovery under the bond issued by Ohio Casualty. Second, Consolidated Pipe alleges that Bolt Construction breached the supply contract between them. Third, the complaint asserts a claim for money due on open account against Bolt Construction. Finally, the complaint asserts a claim against Bolt alleging breach of the guaranty because Bolt failed to reimburse Consolidated Pipe after Bolt Construction failed to pay the amount owed on the contract for the furnished materials.
*1269 On September 7, 2017, the defendants filed their "Response to Plaintiff's Request for Admission of Facts and Genuineness of Documents." On the same date, the defendants filed a joint motion for a change of venue to Jackson County. In that motion, the defendants contended that Morgan County was an improper venue for the action because Bolt does not reside in Morgan County, Bolt Construction is headquartered in Jackson County, and Ohio Casualty is a foreign corporation with its principal place of business in New Hampshire and it does business by agent in Birmingham, Alabama. The defendants contended that under Rule 82, Ala. R. Civ. P., and § 6-3-7(a), Ala. Code 1975, Morgan County was not a proper venue as to any of the defendants. In the alternative, they asserted that under the doctrine of forum non conveniens, pursuant to § 6-3-21.1(a), Ala. Code 1975, Jackson County was a more convenient forum because Bolt lives there.
On September 19, 2017, the Morgan Circuit Court granted the defendants' motion to transfer the case to Jackson County-without conducting a hearing and before Consolidated Pipe had filed a response to the motion. The order stated: "Defendants' Joint Motion to Transfer Venue is GRANTED. The Clerk is directed to transfer the above case to the Circuit Court of Jackson County, Alabama for further proceedings."
The following day Consolidated Pipe filed a motion seeking vacatur of the transfer order.[1] Consolidated Pipe filed evidentiary submissions with its motion, including an affidavit from Carleen White, the office manager for the Water Authority. White attached to her affidavit an executed copy of the bond contract. The motion also contained several arguments in favor of finding that Morgan County was a proper venue and an argument that Morgan County was the more convenient forum under the doctrine of forum non conveniens.
On October 3, 2017, the Morgan Circuit Court held a hearing on Consolidated Pipe's motion. On October 12, 2017, the circuit court denied the motion. On October 17, 2017, Consolidated Pipe filed this petition for a writ of mandamus.
II. Standard of Review
" 'A petition for the writ of mandamus is the appropriate means by which to challenge a trial court's order regarding a change of venue. The writ of mandamus is an extraordinary remedy; it will not be issued unless the petitioner shows " ' "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." ' " Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala. 2000) (quoting Ex parte Gates, 675 So.2d 371, 374 (Ala. 1996) ); Ex parte Pfizer, Inc., 746 So.2d 960, 962 (Ala. 1999).'
" Ex parte Children's Hosp. of Alabama, 931 So.2d 1, 5-6 (Ala. 2005).
"Applying the general rules to a petition for a writ of mandamus challenging a ruling related to venue, this Court has held: 'The burden of proving improper venue is on the party raising the issue *1270 and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.' Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala. 1987). 'Our review is limited to only those facts that were before the trial court.' Ex parte Kane, 989 So.2d 509, 511 (Ala. 2008)."
Ex parte Lugo de Vega, 65 So.3d 886, 891 (Ala. 2010).
III. Analysis
Some background is useful for understanding Ohio Casualty's involvement in the project and in this action. The defendants admitted in their responses to Consolidated Pipe's request for admissions that the project was a public work.[2] White stated in her affidavit:
"3. West Morgan East Lawrence Water and Sewer Authority entered into a contract (hereinafter the 'Construction Contract') for the Public Work with Bolt Construction & Excavating, LLC ('BCE').
"4. To fulfill the requirements of the Construction Contract and applicable law, BCE was required to furnish a payment bond to the West Morgan East Lawrence Water and Sewer Authority.
"5. BCE furnished to the West Morgan East Lawrence Water and Sewer Authority Payment Bond No. 016069745, which was issued by the Ohio Casualty Insurance Company ('Ohio Casualty'), as surety. The Bond is executed by Michael Bolt, on behalf of BCE, as principal, and by Thomas J. Bole on behalf of the Ohio Casualty, as surety."
White's statement that the bond was obtained in part "[t]o fulfill the requirements of ... applicable law" refers to § 39-1-1 et seq. This Court explained in Safeco Insurance Co. of America v. Graybar Electric Co., 59 So.3d 649 (Ala. 2010), that § 39-1-1 et seq. is
"commonly referred to as Alabama's little Miller Act. Federal Ins. Co. v. I. Kruger, Inc., 829 So.2d 732, 734 (Ala. 2002). The Alabama statute is patterned after the Federal Miller Act, now codified at 40 U.S.C. §§ 3131 - 3133. 'The construction given to the federal act has been adopted in Alabama, unless otherwise noted.' Kruger, 829 So.2d at 734 n.1. Generally, when a person has provided labor or materials or has supplied services on a private construction project, the person is entitled under § 35-11-210, Ala. Code 1975, the mechanic's or materialman's lien statute, to file a lien against the private property and subsequently to foreclose on the property, if not paid for those services. However, § 35-11-210 does not apply to public property. Martin v. Holtville High School Bldg., 226 Ala. 45, 145 So. 491 (1933) (public-school building was not subject to foreclosure sale under the predecessor statute to § 35-11-210 ). The Alabama Legislature provided a remedy in 1927 when it codified specific provisions to ensure that materialmen receive full payment for labor or materials supplied on a public-works project. § 39-1-1. Alabama's statute was patterned after a federal act enacted in 1894 called the Heard Act. Ch. 280, 28 Stat. 278 (1894) (since repealed); see also State v. Southern Sur. Co., 221 Ala. 113, 127 So. 805 (1930) (discussing the essential provisions of the state and federal *1271 payment-bond statutes existing in 1930). Alabama first amended its public-works-payment-bond statute in 1935 to pattern it after the federal act called the Miller Act (enacted in 1935 to rectify inadequate protections in the Heard Act). See 40 U.S.C. §§ 3131 - 3133 (formerly 40 U.S.C. §§ 270a - 270d ).
" '[T]he purpose of a payment bond required under the little Miller Act is to "shift the ultimate risk of nonpayment from workmen and suppliers to the surety." ' Kruger, 829 So.2d at 736 (quoting American Sur. Co. v. Hinds, 260 F.2d 366, 368 (10th Cir. 1958) ). 'The purpose of the [little Miller] act is to provide security for those who furnish labor and material in performance of government contracts as a substitute for unavailable lien rights, and is liberally construed to accomplish this purpose.' Headley v. Housing Auth. of Prattville, 347 So.2d 532, 535 (Ala. Civ. App. 1977)."
59 So.3d at 655-56. Thus, Bolt Construction contracted with Ohio Casualty to obtain the bond because of a legal requirement for public-works projects that is intended to provide a remedy for suppliers on such projects because suppliers cannot file a materialman's or mechanic's lien against public property for nonpayment.
Consolidated Pipe first contends that the circuit court erred in transferring the case because the bond contract contains a valid and clear forum-selection clause that should have been enforced. Specifically, paragraph 11 of the bond contract provides:
"11. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the Work or part of the Work is located after the expiration of one year from the date (1) on which the Claimant gave the notice required by Paragraph 4.1 or Paragraph 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Contract, whichever of (1) or (2) first occurs."
(Emphasis added.)
Consolidated Pipe observes that its first claim in this action is asserted under the bond and that "the Work" that is the subject of the bond was located in Morgan County. Therefore, Consolidated Pipe argues, paragraph 11 of the bond contract mandates that Morgan County is the only proper venue for the action. Consolidated Pipe also notes that this Court has repeatedly stated that "a forum-selection clause should be enforced so long as enforcing it is neither unfair nor unreasonable under the circumstances." Ex parte Northern Capital Res. Corp., 751 So.2d 12, 14 (Ala. 1999).
The defendants did not contend below, nor do they assert before this Court, that the enforcement of the forum-selection clause would be unfair or unreasonable or that Consolidated Pipe did not meet the conditions described in paragraph 11 of the bond contract. Instead, their sole argument against the application of the forum-selection clause is that Consolidated Pipe is not a proper "claimant" under the bond contract and therefore that the forum-selection clause contained in the bond contract is irrelevant to determining venue in this action. The defendants reason that the bond secures only payment for creditors "for items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials, or equipment were furnished." Defendants' brief, p. 6. According to the defendants, because the project is on public property, Consolidated Pipe cannot assert a claim based upon the bond *1272 because it cannot assert a materialman's or mechanic's lien in this instance.
However, as Consolidated Pipe observes, this argument is founded upon a plain misreading of the bond contract. Paragraph 15.1 of the bond contract defines a "claimant" as follows:
"15.1 Claimant: An individual or entity having a direct contract with [Bolt Construction], or with a first-tier subcontractor of [Bolt Construction], to furnish labor, materials, or equipment for use in the performance of the Contract.[3 ]The intent of this Bond shall be to include without limitation in the terms 'labor, materials or equipment' that part of water, gas, power, light, heat, oil, gasoline, telephone service, or rental equipment used in the Contract, architectural and engineering services required for performance of the Work of [Bolt Construction] and [Bolt Construction's] subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials, or equipment were furnished."
(Emphasis added.)
Consolidated Pipe notes that "[t]he reference in paragraph 15.1 to a mechanic's lien is made to clarify that the terms 'labor, materials or equipment,' as used in the bond, are intended to cover not only those items specifically identified, but 'all other items for which a mechanic's lien may be asserted ....' " Reply brief, pp. 2-3. In other words, it is not language that limits who is a "claimant" under the bond, but rather language intended to make it clear that the types of materials and labor that could be included in a mechanic's lien are covered by the bond.
"Words used in a contract will be given their ordinary, plain, or natural meaning where nothing appears to show they were used in a different sense or that they have a technical meaning." Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala. 1998). Under a plain and natural reading of the bond contract, a "claimant" is not limited only to those who could file a materialman's or mechanic's lien. Indeed, such an interpretation would eliminate any supplier as a "claimant" under the bond contract.
The foregoing constitutes the defendants' only argument as to why Consolidated Pipe cannot avail itself of the forum-selection clause in the bond contract. The defendants do not dispute Consolidated Pipe's contention that the forum-selection clause would require a claimant to file an action in Morgan County because the project is located in Morgan County, and they do not argue that Consolidated Pipe does not meet any of the other conditions described in paragraph 11 of the bond contract. As already noted, the defendants also have not contended that enforcement of the forum-selection clause would be unfair or unreasonable under the circumstances. See, e.g., Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala.1997). Therefore, under the forum-selection clause, venue was not only proper in Morgan County, Consolidated Pipe was required to file its action in Morgan County. Accordingly, the circuit court clearly erred in transferring this case to Jackson County.
The defendants also argued before the circuit court that the case should be *1273 transferred to the Jackson Circuit Court under the doctrine of forum non conveniens because, they say, Jackson County is the more convenient forum. Section 6-3-21.1, Ala. Code 1975, "provides when a civil action must be transferred under the doctrine of forum non-conveniens." Ex parte Indiana Mills & Mfg., Inc., 10 So.3d 536, 539 (Ala. 2008). However, § 6-3-21.1"only applies if there is more than one court 'in which the action might have been properly filed.' " Ex parte Riverfront, LLC, 196 So.3d 1167, 1173 (Ala. 2015). When a forum-selection clause is enforceable, there is no other court in which the action in question "might have been properly filed." § 6-3-21.1(a), Ala. Code 1975. Accordingly, § 6-3-21.1 has no applicability in this case.
IV. Conclusion
Based on the forum-selection clause, the only proper venue for this action is Morgan County. Therefore, the circuit court erred by granting the motion to transfer. Accordingly, we grant the petition and direct the Morgan Circuit Court to vacate its order transferring this case to Jackson County.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Parker, Shaw, Main, Wise, Bryan, and Sellers, JJ., concur.

We note that there is no indication that, at the time the circuit court reconsidered its ruling granting the motion to transfer the case, the case had been sent to or docketed in the Jackson Circuit Court. See Ex parte Sawyer, 873 So.2d 166, 167 (Ala. 2003) (explaining that a trial court may not change its mind or reconsider a change of venue once the action has been transferred to and docketed in the new court).

The defendants agreed with the following statement in their responses to the requests for admission: "Consolidated sold materials to Bolt Construction on credit for the construction of a public work project known as the Vaughn Bridge Road Water Line Relocation Project No. 14018.00 (hereinafter the 'Project')."

Paragraph 15.2 of the bond contract defines the "Contract" as "[t]he agreement between [the Water Authority] and [Bolt Construction] identified on the signature page, including all Contract Documents and changes thereto." On the signature page of the bond contract, under a block of text titled "CONTRACT" it provides: "Description (Name and Location ): Vaughn Bridge Road Water Line Relocation Project No. 14018.00."